## PEOPLE'S GASLIGHT & COKE CO. v. CITY OF CHICAGO et al.

(Circuit Court, N. D. Illinois, N. D.   January 15, 1902.)

### No. 25,780.

1. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACT—ORDINANCE REGULATING PRICE OF GAS.

Under the Illinois constitution of 1870, and the general incorporation act adopted in conformity therewith, there is a reserved power in the state to regulate from time to time, within reasonable limits, the rates to be charged by gas companies incorporated under such act, in the absence of explicit contracts created by ordinance fixing such rates. Act June 5, 1897, authorizes gas companies doing business in the same city or town to consolidate into a single corporation, which shall be one of the merging companies, but provides that the consolidated corporation shall be subject to the legal obligations resting upon each of the constituent companies, none of them being, in the contemplation of the act, extinguished. Complainant, a Chicago gas company, was incorporated in 1855 by special act, which, as subsequently amended, gave the city the right to regulate its charges, but provided that it should not have authority to compel the company to furnish gas at a less rate than $3 per thousand feet. Subsequently complainant acquired by consolidation, under Act 1897, the lines of other companies organized after 1870, and later brought suit in a federal court against the city to enjoin the enforcement against it of an ordinance limiting the charge to be made for gas by any corporation or person furnishing the same to 75 cents per thousand feet, the bill alleging that as applied to complainant such ordinance was unconstitutional as impairing the obligation of the contract made by its charter, as denying it the equal protection of the laws, and as depriving it of its property without due process of law. *Held* that, in the absence of allegations showing that the rate fixed by the ordinance was unreasonable, complainant was not entitled to the relief demanded on either of such grounds; that the limitation upon the power of the city to fix rates contained in its original charter did not extend to the lines it acquired, without the consent of the city, by the absorption of other companies; but that it took such lines, under the provisions of the consolidation act, subject to all rights which the city or the state possessed as against the original companies.

2. FEDERAL COURTS—JURISDICTION—CONSTRUCTION OF STATE LAWS.

Whether an ordinance is within the powers delegated to a city by the laws of the state is a question the decision of which belongs primarily to the courts of the state, and a federal court will not determine it, in a suit between citizens of the same state in which its jurisdiction is invoked for the decision of a federal question, unless necessarily involved in such decision.

In Equity.   On demurrer to bill.

Meagher & Whitney, for complainant.

C. M. Walker, Corp. Counsel, for defendants.

GROSSCUP, Circuit Judge.   The bill is to restrain the city of Chicago from putting in force an ordinance passed October 15, 1900, providing that corporations, companies or persons manufacturing, selling or distributing gas in the city of Chicago for illuminating or fuel purposes shall not charge individual consumers more than seventy-five cents per thousand cubic feet, provided the same is paid within ten days from the rendering of the bill, or eighty-five cents per thousand feet if payment be postponed.   The ordinance provides penalties against the company, corporation or person violating its provisions.

It is a general ordinance, relating to all manufacturers and distributors of gas in the city, and applicable to the complainant only because complainant happens to be such a manufacturer and distributor of gas in the city.

The bill, in substance, avers that the complainant is now furnishing such gas at the net rate of one dollar per thousand cubic feet, and that the enforcement of the ordinance in question, compelling a reduction, would be in violation of the contract embodied in the charter of complainant under which its plant was installed and expanded, and, therefore, in contravention of the first paragraph of section 10, article 1, of the constitution of the United States, providing that no state shall pass any law impairing the obligation of contracts; also that its enforcement would be in violation of the fifth amendment to the constitution, providing that no person shall be deprived of life, liberty or property without due process of law; also in violation of the fourteenth amendment to the constitution, providing that no state shall deprive any person of life, liberty or property without due process of law, or deny to any person the equal protection of the laws. Unless, however, the complainant's charter constitutes a contract, it is difficult to see how the ordinance would result in depriving the complainant of its property without due process of law, or be a denial to complainant of the equal protection of the laws. The whole case, therefore, in its constitutional aspect, turns upon the question whether the ordinance violates any contract right of complainant as embodied in its charter.

The complainant's charter was by special act of the legislature, approved February 12, 1855, creating it a corporation with the usual powers and liabilities, with a capital stock not to exceed five hundred thousand dollars, and providing in section 4 that the company should furnish to the city of Chicago, for its public uses, gas at a rate not exceeding two dollars per thousand, and to the inhabitants of said city at a rate not exceeding two dollars and fifty cents per thousand.

February 7, 1865, this act was amended, allowing an indefinite increase of capital stock; repealing expressly the fourth section relating to the limit upon price, and providing that "ten years after the passage of the act the common council of the city of Chicago may by resolution or ordinance regulate the price charged by said company for gas, but said common council of the city of Chicago shall in no case be authorized to compel the said company to furnish gas at a less rate than three dollars per thousand feet." Laws 1865, p. 590.

The contention of the complainant is that no matter what may now be the general power of the city in the way of regulating the price of gas, under the constitution of 1870, and the corporation acts coming into force thereafter, the city may not, without impairing the obligation of complainant's contract, fix for complainant, a price at less than three dollars per thousand feet; and the decree invoked is to maintain this supposed constitutional right of inviolability of contract.

The city contends that in the absence of a clear provision in the charter in maintenance of complainant's contention, the general right of cities to regulate the price of gas is applicable to complainant, as well as to other manufacturers or distributors; and that the clause

in question embodies no such clear prohibition or limitation as to interfere with the city's general right of regulation of rates. It is insisted that the clause was intended, not as a limitation upon the powers of the city, but as a restriction laid upon the legislature itself in respect of further legislation on the subject involved.

. The interpretation of the clause is not free from considerable difficulty. It is not easy to see why the legislature should have intended it as a restriction upon itself or its successors; for, however precisely or emphatically such attempted restriction may have been formulated, it would have been an empty phrase when the succeeding legislature came into existence. Nor is it easy to see how the legislature intended that the prices of 1865, measured by the then depreciated dollar standard, should be made perpetual in favor of complainant, in face of the certainty that the legal tender dollar would some time rise to its true value, and that, in the course of events, the cost of manufacturing gas would decrease. But in view of the conclusion to which I have come, it is needless to pivot this case upon the interpretation to be put upon this clause.

The supreme court of the United States in Freeport Water Co. v. City of Freeport, 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679, ruled that under the Illinois constitution of 1870, and the subsequent acts, relating to municipalities and the incorporation of companies, there is reserved in the state the power to prescribe in the government of corporations such regulations as it may deem advisable; and that such right of regulation extends to the fixing, from time to time, of reasonable water rates, unless, possibly (and on this the court refrains from ruling), there be an explicit limitation to the contrary in the ordinance or contract under which the works are installed. It is clear, in the application of this decision to the case under consideration, that, as between the state and any gas companies organized under the constitution of 1870, and the act of the legislature in pursuance thereof, under ordinances containing no explicit contract relating to minimum rates, there is a reserved power in the state to regulate, within reasonable limits, the rates from time to time. Whether such power has been delegated to the city is an inquiry, that, for reasons stated later, I need not enter upon. In considering the phase of the case I now approach, it is a matter of indifference whether the general power of regulation be in the general assembly, or in the city as an agent of the state. It is sufficient to the argument that it is lodged somewhere in the instrumentalities of the state.

It was disclosed at argument in answer to inquiries of the court—though not set forth in the bill—that the complainant originally manufactured and distributed gas upon the West side only, and that its South and North side system was acquired through merger or purchase of other gas companies under the consolidation act of 1897.

Two of these companies, the Equitable Gas Company and the Consumers' Company, were organized under the constitution of 1870 and the acts in pursuance thereof. The Chicago Gaslight & Coke Company was organized under a special act of February 12, 1849, amended February 9, 1855; but contains no restriction upon the right of the general assembly, or the city, to regulate from time to time the

prices of gas; nor, so far as disclosed, is there, in any ordinance or contract between these companies and the city, any restriction upon its general right of regulation from time to time.

The act under which the merger of the companies took place, approved June 5, 1897, provides that gas companies organized in Illinois are authorized and empowered to sell, transfer, convey or lease their real and personal property, rights, franchises and privileges, in whole or in part, to any other gas company doing business in the same city, and that such other gas company is authorized to purchase, lease, hold and enjoy such property; also, that gas companies doing business in the same city, town or village may lawfully consolidate and merge into a single corporation (to be one of the merging companies) by complying with a certain procedure therein specified. A further section of the act provides that the consolidated corporation thus organized shall be subject to the legal obligations now resting upon each of the companies so merged, respectively, under their several charters and ordinances, in the same manner and to the same extent as if the companies had remained individual and distinct,—none of said companies being, in contemplation of the act, extinguished.

In answer to an inquiry of the court at argument, counsel for the complainant contended that the merger of the other gas companies with the complainant was the equivalent of the complainant's extension, by original installation, of its works and pipes into the field occupied by the other companies. Were this so, the supposed restriction contained in the charter of 1855 would follow the merger, and extend to the entire system now operated by the consolidated company.

But a little reflection shows this position unsound. The act of 1855 authorizes complainant to erect its works and lay its pipes in the streets and alleys of the city, subject to the consent of the city council. In the absence of consent, no pipes could have been laid. It is possible that the city may not, in mere arbitrariness, withhold its consent, where the consent asked for was in the ordinary development of the complainant's plant; but absence of consent, founded on refusal to extend the field for the application of complainant's three-dollar minimum rate, would not be arbitrary. The city council was, therefore, from the organization of the complainant company, in contemplation of complainant's charter, a necessary party to any substantial extension of its plant, carrying the charter restriction as to regulation of rates. No consent of the city has been given to the merger, and, therefore, no consent has been given to the enlargement of complainant's franchise, as affected by the limitation in the charter of 1855 relied upon. I do not see how the complainant can, in the absence of such consent, carry over to the territory acquired under the merger its supposed charter exemption from regulation of price. A contrary holding would enlarge the subject-matter of this exemption without the consent of the city,—a result which the act of 1855 does not contemplate, but clearly negatives.

The terms of the merger act of 1897 reinforce this conclusion. It specially provides, as already stated, that the consolidated corporation shall be subject to the legal obligations now resting upon each of the

companies absorbed. One of these obligations is (in the absence of a contrary contract provision) to submit to the state's right of reasonably regulating the price of gas from time to time. In this respect, the consolidated company stands precisely where each of the merged companies stood, and, as we have seen, neither of these was exempt from the state's general right of regulation. In respect to the system acquired through the merger, therefore, the complainant has no contract of exemption under the charter of 1855.

It is obvious then from what has been stated, as against the state's power to reasonably regulate rates from time to time, the complainant, to the extent, at least, that it is successor to the merged companies, enjoys under the act of 1855 no exemption from regulation. But it is urged that the powers of the general assembly, in this respect, are not delegated to the city, and, therefore, however this reasoning might apply to the powers of the general assembly, it is inapplicable to any claim of such power upon the part of the city.

I refrain at this time from entering into so far-reaching a question,—a question involving the policy of the state respecting the custody of some of its greatest powers. The question thus raised, growing out of the interpretation of state statutes, is one primarily belonging to the state courts. My jurisdiction of the case under consideration does not extend to that question, unless its decision, one way or the other, is a necessary predicate to the constitutional question involved. I do not see that it is. If I hold that, under existing legislation, the city has not been delegated with the state's power to regulate rates, it is manifest that the real and adequate reason for annulling the ordinance complained of would be, not any provision of the federal constitution, but this lack of power, as shown in the state legislation. On the other hand, if I should hold that the state's power had been delegated to the city, then, according to the reasoning already stated, the injunction prayed for would be refused. Whichever way one looks at this phase of the case, it turns, not on federal constitutional law, but upon the interpretation of the state statutes, and is not, therefore, within the meaning of the judiciary act, a case involving the construction of the laws or the constitution of the United States. If complainant's substantial remedy against the ordinance complained of is lack of power in the city, its relief must be found in the state courts.

Whether, by the merger, the complainant has lost its right to exemption from regulation, to the extent that the consent was given to the installation of its original system, it is not necessary to decide, for the bill asks for no divisional relief. Nor is it necessary to consider the reasonableness of a seventy-five cent rate, as provided in the ordinance, for no facts challenging the ordinance as unreasonable are set forth in the bill.

I realize that this case is one of great importance, both to the city and to the gas company, and that it may finally be brought under the review of the supreme court, and have, therefore, considered it upon a larger survey of the facts than the pleadings before me justify. I suggest that the bill be amended to bring in these facts, or that the demurrer be withdrawn and an answer filed, bringing them in, reserving

the right of demurrer to the bill as it now stands. If the facts thus disclosed are as I apprehend them, an order will then be entered in accordance with the conclusions of the law already stated.